**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ricky Lee Jarrett, | No. CV-17-01589-PHX-JAT (CDB) |
| Plaintiff, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Defendants. | |

Plaintiff is an inmate at the Arizona Department of Corrections. Plaintiff filed an amended complaint against Defendants, which this Court screened pursuant to 28 U.S.C. § 1915A(a). (Doc. 9). Following this Court's screening order (Doc. 9) one Count remained as follows: "Liberally construed, Plaintiff has adequately stated an Eighth Amendment conditions of confinement claim against Defendant Dorsey in Count Two for the denial of cleaning supplies." (Doc. 9 at 8).

Defendant Dorsey now moves for summary judgment on this Count. (Doc. 45).[1] Defendant Dorsey's motion generally has four arguments: 1) Plaintiff cannot establish a constitutional depravation and Defendant's conduct was not wanton; 2) Plaintiff cannot show the required injury; 3) she is entitled to qualified immunity; and 4) Plaintiff is not entitled to injunctive relief. (Doc. 45).

**I.    Legal Standard for Summary Judgment**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---
[1] Plaintiff received the required *Rand* warning. (Doc. 47).

as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. *Id.* at 255.

*Freemon v. Ryan*, No. CV 09-1717-PHX-JAT, 2011 WL 5169342, at *5 (D. Ariz. Oct. 31, 2011).

## II. Eighth Amendment

### A. Legal Standard

"[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Among 'unnecessary and wanton' inflictions of pain are those that are totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted). To demonstrate that a prison official has deprived an inmate of humane conditions in violation of the Eighth Amendment, two requirements must be met—one objective and one subjective. *Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000). First, "the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities." *Id.* (internal citation omitted). The subjective prong requires the inmate to demonstrate that the deprivation was a product of "deliberate indifference" by prison officials. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). …[D]eliberate indifference occurs only if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm [exists], and he must also draw the inference." *Farmer*, 511 U.S. at 837.

*Freemon*, 2011 WL 5169342, at *15.

> …[S]ubjecting an inmate to lack of sanitation that is severe or prolonged can rise also to a constitutional deprivation. *Anderson,* 45 F.3d at 1314; *see Hutto v. Finney,* 437 U.S. 678, 686–87 (1978). Therefore, prison officials must provide inmates with adequate sanitation. *See Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000). If a prison official's refusal to provide adequate cleaning supplies prohibits inmates from maintaining minimally sanitary cells and thereby threatens their health, it amounts to a constitutional violation. *See Hoptowit v. Spellman,* 753 F.2d 779, 784 (9th Cir. 1985).

*Freemon*, 2011 WL 5169342, at *18. In other words,

> The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Helling v. McKinney,* 509 U.S. 25, 31 (1993). A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. *See Farmer*, 511 U.S. at 834. "The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000), *cert. denied,* 532 U.S. 1065 (2001). Usually, a more offensive condition will be of constitutional significance when it exists for even a short time, while a less offensive condition will be of constitutional significance only when it has existed for a much longer time. Long-term unsanitary conditions violate the Eighth Amendment, as do non-working toilets. *See, e.g., Hearns v. Terhune,* 413 F.3d 1036, 1041–42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); *Anderson v. County of Kern,* 45 F.3d 1310, 1314 (9th Cir.) ("Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."), *amended,* 75 F.3d 448 (9th Cir.), *cert. denied,* 516 U.S. 916 (1995); *id.* at 1314–15 (placement of violent and mentally disturbed inmates in safety cell that was dirty and smelly with a pit toilet for short duration (up to one day) did not violate 8th Amendment).

*Cockcroft v. Kirkland*, 548 F. Supp. 2d 767, 774–75 (N.D. Cal. 2008).

**B.     Pending Motion**

**1.     Factual Background**

Defendant recounted the following facts, which Plaintiff does not appear to dispute:

> Plaintiff was housed in a protective custody cell at ASPC-Lewis-Buckley Unit from September 6, 2013, through February 7, 2018. He worked as a building porter there from August 18, 2014, through September 27, 2016. He was transferred to an ADA cell at Buckley on January 15, 2018. On February 8, 2018, he was transferred to Barchey Unit, where he remains housed today.

(Doc. 45 at 2 (citations omitted)); *see also* (Doc. 57 at 2).

Plaintiff's claim in this case is focused on the fact that he was allegedly not given adequate cleaning supplies, or opportunities, to clean his cell. (Doc. 57 at 2-3). Defendant argues on summary judgment that in investigating Plaintiff's grievance regarding his lack of cleaning supplies, she concluded Defendant did receive cleaning supplies. (Doc. 45 at 2-3). Specifically, Defendant alleges that that:

> CO II Jhiremy Rabadan worked at Buckley during the relevant time. His duties included providing inmate porters with cleaning supplies on a weekly basis for their use in cleaning Buckley Unit common areas; and for use by other inmates, upon request, to clean their individual cells.…
>
> If, an inmate wanted to clean his cell using the cleaning supplies provided to the porters, he could either ask an officer to allow the porter to let him use the cleaning supplies, or have the porter ask an officer for permission to do so. When an officer was able to do so safely, he would have the control room officer open the cell of the inmate who wanted to clean and allow the porter to give cleaning supplies to the inmate.
>
> A porter could also clean his cell by requesting that his cell be unlocked. Additionally, a porter could clean his cell whenever the cell door was open, including whenever his cellmate was out of the cell.
>
> Rabadan saw Plaintiff walk into his own cell multiple times while he worked as a porter. He had the opportunity to clean his cell on any of those occasions.
>
> If an inmate did not want to use the cleaning supplies given to the porters, he could purchase shampoo and towels from the prison commissary with which to clean his cell.

(Doc. 45 at 2-3 (citations omitted)).

Conversely, Plaintiff alleges that not enough cleaning supplies were provided to clean both the common areas and the cells. (Doc. 57 at 2-3). Further, Plaintiff alleges that, "No [inmate] was ever allowed to clean his cell at any given time for the whole five years Plaintiff was housed at Buckley Unit. Any time an [inmate] would request to clean his cell the officer would not let him." (Doc. 57 at 3). Plaintiff also alleges that while he was working as a porter, if he asked to have his cell door open, his request would be denied by the officers. (Doc. 57 at 3). Plaintiff disputes CO II Rabadan's account of seeing Plaintiff walk into Plaintiff's cell while Plaintiff worked as a porter because Plaintiff claims that CO II Rabadan worked in another building and did not have the opportunity to observe Plaintiff. (Doc. 57 at 2-3). Finally, Plaintiff alleges "All [inmates] were forced to purchase shampoo and towels from the prison commissary if they wished to clean their cells because

- 4 -

there was no other alternative." (Doc. 57 at 3).

The Court notes that Defendant disputes whether the Court can consider Plaintiff's allegations as evidence. Specifically, Defendant argues that Plaintiff did not present his evidence in the form of a sworn affidavit or declaration. (Doc. 62 at 3 (citing *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018), *cert. den.*, 139 S. Ct. 480 (2018))). While it is true that in his opposition to the motion for summary judgment and his statement of facts Plaintiff did not present his personal testimony in the form of a sworn affidavit or declaration, Plaintiff did file his amended complaint under penalty of perjury. (Doc. 8 at 21). This Court may consider a verified complaint as "evidence" in opposition to a motion for summary judgment. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) Although the Court has cited Plaintiff's response because it is directly responsive to the motion for summary judgment, all of Plaintiff's allegations therein can be found in his verified complaint. (Doc. 8 at 15-19). Thus, the Court finds the record contains competent evidence.

On this record, the Court finds a disputed issue of fact that precludes summary judgment on the merits of the first prong[2] of Plaintiff's claim, namely: whether the prison official's acts or omissions deprived plaintiff of the minimal civilized measure of life's necessities. Specifically, while Defendant avows that Plaintiff was given the opportunity to clean his cell, Plaintiff avows that the policy and provisions that would allow him to do so are, in reality, not followed or available. Further, Plaintiff directly contests CO II Rabadan's account of him observing Plaintiff going into his cell while Plaintiff was working as a porter. Finally, Plaintiff claims that the condition persisted for five years, which is more than a single or temporary incident. (Doc. 57 at 3). On this record, there is a disputed issue of fact as to whether Plaintiff was permitted to clean his cell.[3]

---

[2] As to the second prong of Plaintiff's claim, namely — whether the prison official knew of and disregarded an excessive risk to inmate health or safety; the official must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and she must draw the inference — the Court will address this issue with qualified immunity below.

[3] Defendant seeks to strike certain evidence Plaintiff submitted with his motion for summary judgment arguing it was not properly disclosed in discovery. (Doc. 62 at 4-6).

## III. Injury

Defendant also seeks summary judgment claiming Plaintiff has failed to show he suffered an injury as a result of his alleged constitutional deprivation. (Doc. 45 at 14) (citing *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *see also Pierce v. County of Orange*, 526 F.3d 1190, [1223-24] (9th Cir. 2008); *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003)). Plaintiff claims he has various a skin conditions, and specifically pruritus, that resulted from the unsanitary conditions. (Doc. 57 at 7).

Defendant does not dispute that Plaintiff has the skin condition in question. (Doc. 62 at 9-10). However, Defendant argues that, other than Plaintiff's personal beliefs about the cause of his condition, none of the medical evidence definitively concludes that the alleged unsanitary conditions caused his skin condition. Indeed, Plaintiff recounts his diagnosis as, "Plaintiff was finally diagnosed with having Pruritus which by studying the Lab Report he would find out how 'persistent cases' such as the one he suffered from, could be caused by dry skin, mite infestation, allergic reactions, neurodermatosis, or organic disease." (Doc. 58 at 7).

To survive summary judgment, Plaintiff must raise a genuine issue of material fact as to whether the unsanitary conditions caused his injury. *See Whittington v. King Cty. Dep't Of Corr.,* 308 F. App'x 218 (9th Cir. 2009) (affirming a grant of summary judgment to defendant when, "[Plaintiff] failed to raise a genuine issue of material fact as to whether unsanitary conditions in the jail caused the staph infections he contracted."). However, there are multiple kinds of damages.

The Seventh Circuit explained,

> When assessing an Eighth Amendment claim, we look for physical injury "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008). Gray contends that his asthma became worse as a result of the unsanitary conditions at Stateville, and that he also began suffering from skin breakouts within six to eight months of his arrival there. (Bearing in mind that this is a

---

The Court decided the motion for summary judgment without reference to this evidence; thus, the Court need not decide at this time whether it was properly disclosed. (The evidence is three potential witness affidavits.)

prison-conditions case, not a case about inadequate medical treatment, this is enough to show some physical injury. Excessive cold, for example, can also amount to an Eighth Amendment violation, even if the prisoner has not yet come down with the flu.)

Asthma, if serious enough, can constitute injury for Eighth Amendment purposes. *See Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (noting that "[a]sthma, depending upon its degree, can be a serious medical condition"). Here, there is a factual dispute over the cause and severity of Gray's asthma. The warden tries to avoid it by arguing that Gray … cannot prove causation.
…
Gray left no doubt that he was alleging that his worsened asthma symptoms (as compared to those he had while at Cook County Jail) resulted from increased dust and dander. He presented evidence of the infestations and his worsened health, and he suggested that the timing indicated a causal link.

Gray's lack of an affidavit from a medical expert does not doom his pro se claim at this stage. … The warden asserts that the case cannot go forward unless Gray can present scientific evidence showing the necessary causal relation. … [Gray] alleges that he already has suffered injuries (worsened asthma, skin rash), and he relies on the common-sense link between excessive dust, insect dander, and the like, and compromised breathing. While it surely would have been better if Gray had been able to locate a medical expert, the fact that he was unable to do so from prison does not in this situation spell the end of his case.

Gray also alleges that he has suffered psychological harm from the environment he has described. Although the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), bars prisoners from bringing a suit based only on mental or emotional injury, Gray's case is not so limited: he also alleges physical injury. Furthermore, we have recognized that "[a]lthough § 1997e(e) would bar recovery of compensatory damages 'for' mental and emotional injuries suffered, the statute is inapplicable to awards of nominal or punitive damages for the Eighth Amendment violation itself." *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) (quoting § 1997e(e)).

In determining whether filth and infestation comparable to that which Gray experienced would be enough to prove an Eighth Amendment violation, we have noted that:

> Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have (recall Winston's unreasoning fear of rats in Nineteen Eighty–Four, a fear exploited by his torturers to break his spirit without actually touching him, *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998)), and how long the infestation continues, a trier of fact might reasonably conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment even if he had not contracted a disease or suffered any physical pain.

*Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012). "The potential psychological harm from living in a small cell infested with mice and

cockroaches is pretty obvious." *Id.* at 615.

> Gray's summary judgment materials, we conclude, present triable issues of fact for a jury, which must determine the degree of both physical and psychological harm he suffered as a result of the infestations and dirt. If the jury finds that Gray suffered only psychological harm, he will be limited to nominal and punitive damages.

*Gray v. Hardy*, 826 F.3d 1000, 1006-08 (7th Cir. 2016).

If this were the Seventh Circuit, the injuries alleged in this case are similar enough to the injuries alleged in *Gray* that the Court would be confident this case should survive summary judgment on this point. However, the Court must now determine whether the cases from the Ninth Circuit relied on by Defendant create a more onerous burden on Plaintiff to show damages than in the Seventh Circuit.

Although Defendant relies on *Oliver*, *Oliver* does not really speak to the issue Defendant raises. Specifically, *Oliver* holds that § 1997e(e) bars claims for mental and emotional damages that are not premised on a physical injury that is more than *de minimis*. *Oliver v. Keller*, 289 F.3d 623, 626-627 (9th Cir. 2002). The Court has also reviewed *Pierce* and *Jackson*, the only other cases cited by Defendant. Like *Oliver* they discuss what is a more than *de minimis* injury, not what evidence is required to prove the cause of the injury.

Thus, the Court finds all three cases to be inapposite because, here, Defendant does not argue that Plaintiff's skin condition is so *de minimis* that it is not a qualifying "injury." Instead, Defendant is arguing Plaintiff cannot prove that the physical injury resulted from the unconstitutional condition. This causation issue has two components.

The first is issue whether certain kinds of damages can proceed without any physical injury notwithstanding § 1997e(e). In this circuit, the answer is yes. In *Oliver*, after the Court concluded that Plaintiff had only *de minimis* injury that would not withstand the bar of § 1997e(e), the Court held:

> Applying § 1997e(e) to the facts of this case, we reach a conclusion similar to *Al–Hafeez* and *Searles*. Appellant's complaint seeks punitive damages and is consistent with a claim for nominal damages even though they are not expressly requested. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se complaints may be construed liberally); *Al–Hafeez*, 226 F.3d at 251 (construing pro se complaint to include claim for nominal damages where

complaint sought only compensatory and punitive damages). Appellant's complaint also seeks compensatory damages. To the extent that appellant has actionable claims for compensatory, nominal or punitive damages— premised on violations of his Fourteenth Amendment rights, and not on any alleged mental or emotional injuries—we conclude the claims are not barred by § 1997e(e).

*Oliver*, 289 F.3d at 630. Further, the *Oliver* Court noted:

> In *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998), we refused to apply § 1997e(e)'s prior physical injury requirement to a § 1983 action alleging violation of a prisoner's First Amendment rights because "deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from the physical injury he can show, or any mental or emotional injury he may have incurred ... regardless of the form of relief sought." *Id.* at 1213. Nothing in our holding today disturbs our prior holding in *Canell*.

*Oliver*, 289 F.3d at 627 n. 5.

Thus, the Court concludes that the injuries alleged by Plaintiff are sufficient to sustain a claim for nominal damages, compensatory damages, or punitive damages under *Oliver* or judicial relief under *Canell* regardless of his physical injury. (The Court has not undertaken to determine which of these various damages Plaintiff is seeking).

The second issue is whether, for Plaintiff's claim of emotional or mental damages which must be premised on a more than *de minimis* physical injury, Plaintiff is required to have a medical expert who will testify that his skin condition is a result of his conditions of confinement. The parties seem to agree that the medical records show that it is possible that Plaintiff's skin condition is a product of unsanitary conditions; however, the medical records also suggest several possible other causes of Plaintiff's skin condition.

In the context of an excessive force claim under § 1983, courts have held that a medical expert to establish causation as to the injuries is not required:

> If plaintiff can establish at trial that defendants' use of force was excessive, then the question of whether their force led to plaintiff's broken arm or some lesser injury is a question for the jury. *See, e.g., M.H. v. County of Alameda,* No. 11–cv–02868–JST, 2014 WL 1429720 at *34 (N.D. Cal. Apr.11, 2014) ("If Plaintiffs can establish at trial that the deputies used excessive force, the question of whether the force led to Harrison's death or merely to some of his injuries will be a question of fact for the jury."); *Finch v. Lopez,* No. ED CV 10–1440–BRO (PJW), 2013 WL 2898055 at *3 (C.D. Cal. June 11, 2013) ("Though Plaintiff may have difficulty establishing the extent of his injuries on his testimony alone and differentiating those injuries from his prior complaints, he certainly has presented sufficient evidence on causation at this stage to survive summary judgment."); *see also Seals v. Mitchell,* No. CV 04–3764 NJV, 2011 WL 1399245 (N.D. Cal. Apr.13,

2011) ("Plaintiff is correct that he is not required to present a medical expert to establish his § 1983 excessive force case.").

*Morrison v. Prentice*, No. 2:09-CV-1544 MCE DAD, 2014 WL 2565976, at *15 (E.D. Cal. June 6, 2014), *report and recommendation adopted,* No. 2:09-CV-1544 MCE DAD, 2014 WL 3689288 (E.D. Cal. July 23, 2014).

In this case, the Court finds there is a question of fact for the jury as to whether Plaintiff's skin condition was caused by the alleged unsanitary conditions. Plaintiff has his own testimony as evidence, the temporal proximity, and evidence from a doctor that is not inconsistent with Plaintiff's theory of causation. Accordingly, Defendants are not entitled to summary judgment on the theory that Plaintiff cannot establish that the alleged cell condition caused his skin condition. Further, there is no dispute in this record that Plaintiff's physical injury is more than *de minimis*.

## IV. Reasonableness

### A. Qualified Immunity

In some cases, a prison official may be entitled to qualified immunity, which protects the official from both civil damages and the burdens of litigation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Schwenk v. Hartford*, 204 F.3d 1187, 1195-96 (9th Cir. 2000); *Saucier v. Katz*, 533 U.S. 223, 233-36 (2009). The Ninth Circuit Court of Appeals recently summarize the test for qualified immunity as:

> Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In this context, "clearly established" means that, "at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, ––– U.S. ––––, 138 S.Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Courts must "define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Tolan*, 572 U.S. at 657 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

*Emmons v. City of Escondido*, No. 16-55771, 2019 WL 1810765, at *2 (9th Cir. Apr. 25, 2019).

As to the first prong, "[t]he threshold inquiry in a qualified immunity analysis is

whether the plaintiff's allegations, if true, establish a constitutional violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (citations omitted). Defendant does not dispute in a broad sense (Doc. 45 at 17)) that allowing Plaintiff some cell cleaning opportunity over a five-year period was a clearly established right. Thus, the Court finds that if the facts are as Plaintiff alleges — that he was never allowed to clean his cell in a five-year period (Doc. 57 at 3) — then Plaintiff has alleged a constitutional violation. *See Anderson*, 45 F.3d at 1314.

Under the second prong of the qualified immunity analysis, an officer is entitled to qualified immunity if it would not have been clear to a reasonable officer that her conduct was unlawful in the situation. *Saucier*, 533 U.S. at 202. An officer may still receive qualified immunity if she makes a reasonable, but mistaken judgment. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011). In other words, even if an officer violated a clearly established right by making a mistake in applying the relevant legal doctrine, the officer is still entitled to qualified immunity if the mistake as to what the law required was reasonable. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).

### B. Deliberate Indifference

As discussed above as to the merits of Plaintiff's claim, the second prong of the claim is a subjective one. Specifically, whether the prison official knew of and disregarded an excessive risk to inmate health or safety; the official must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and she must draw the inference. *Farmer*, 511 U.S. at 837.

In the section of her motion for summary judgment discussing this second prong of the merits of Plaintiff's claim, Defendant concludes by arguing that she should be entitled to summary judgment because she acted reasonably. (Doc. 45 at 13). Defendant argues under *Farmer* that if she responded to the risk reasonably, then there is no liability even if the harm was not averted. (Doc. 45 at 12).

### C. Factual Background

Consistent with the law discussed above, both the deliberate indifference standard

1 and the second prong of the qualified immunity analysis focus on the reasonableness of the
2 officer's behavior. The following facts are undisputed unless otherwise noted.

Defendant received Plaintiff's grievance about the lack of cleaning supplies for the cells. (Doc. 45 at 13). Defendant alleges that she reviewed and investigated the grievance. (Doc. 45 at 14). She further alleges that she called DW Roan to investigate Plaintiff's grievance. (Doc. 45 at 7). She alleges that she learned from DW Roan that Plaintiff was a porter. (Doc. 45 at 7). She alleges that she knew porters had access to cleaning supplies. (*Id.*). She alleges she knew porters had sufficient cleaning supplies to clean the common areas and their own cells. (Doc. 45 at 7).[4] She further alleges she knew that while Plaintiff worked as a porter he had access to his cell and had the opportunity to use the cleaning supplies to clean his cell.[5] (*Id.*).

Further, Defendant notes that Plaintiff admits that CO II Rabadan delivered additional cleaning supplies to Plaintiff when he requested them. (Doc. 45 at 7). Defendant did not find credible Plaintiff's claim in his grievance that no inmate has ever been allowed by any officer to clean the inside of his cell at any time. (Doc. 45 at 7). Plaintiff's grievance about the lack of opportunity to clean his cell is the only grievance Defendant received about this issue. (Doc. 45 at 9).

The issue as to the reasonableness of Defendant's response turns on whether it was reasonable for her to rely on her knowledge of what was *supposed to* be transpiring versus whether she had a duty to more thoroughly investigate what was actually transpiring. Specifically, Plaintiff admits that he was a porter, and that as a porter he was regularly given cleaning supplies. (Doc. 57 at 2-3). However, Plaintiff claims that during his work, while he was allowed access to the cleaning supplies, he was never, in 5 years, also allowed access to his cell. (*Id.*). Plaintiff claims that when he left his cell to work, the cell would be locked. (*Id.*) Plaintiff claims that when he would ask the officers to open the door to clean the cell, that request was always denied due to staffing shortages. (*Id.*). More

---
[4] This allegation is disputed.
[5] This allegation is disputed.

particularly, Plaintiff states,

> Plaintiff was the pod porter… many times inmates would ask to clean their cell, but the officer would never allow it. Plaintiff dwells in a lockdown facility where no inmate has the leisure to open their cell door in order to clean their cell and the officers never allow inmates to do so. Whenever an inmate makes a request, the officer always responds with "not right now" and it never gets done.

(Doc. 8 at 15-16).

Thus, Plaintiff does not dispute Defendant's account of what she knew was supposed to occur; namely, that Plaintiff could request that his cell be opened for cleaning while he was acting as a porter. What Plaintiff claims is that despite the fact Defendant knew this was supposed to occur, it never actually occurred.

Thus, the Court must determine whether Defendant's reliance on what she "knew" was reasonable. First, Defendant was presented with Plaintiff's grievance that explicitly stated that he was never permitted to clean his cell. (Doc. 46-3 at 26). In his grievance appeal, Plaintiff explains that he is never given the opportunity to clean his cell with the cleaning supplies provided. (*Id*.). Further, Defendant had Plaintiff's grievance supplement in which Plaintiff stated, "I have been the Pod Porter for two years now and whenever I have brought to the officer[']s attention an inmate[']s request to clean his cell he always says no and he won't open any door." (Doc. 46-3 at 27).

Defendant responded to Plaintiff's grievance appeal by saying, "Inmates may contact any staff member, at any time, to request cleaning supplies to clean their cells…. Your alleged statement that inmates have ever [*sic*] never been allowed to clean the inside of their cell is unfounded." (Doc. 46-3 at 32). The Court has reviewed Defendant's affidavit regarding how she reached her conclusion that Plaintiff's claim was unfounded. In paragraphs 49-56, Defendant states she *knew* that as a porter, Plaintiff was allowed to clean his cell. (Doc. 46-3 at 9-10). Notably, she does not say that during her investigation anyone told her that cleaning was actually happening. Nor does she say that she asked anyone whether cell cleaning was being permitted by the guards. She merely states that she knows this to be true, even though she admits that "Speaking with deputy wardens about the response they signed was my standard practice because, unlike me, they had a

- 13 -

nearly daily presence in their unit and so were more familiar with day-to-day operations and events at their units, and could provide me with information relevant to the particular issue at hand." (Doc. 46-3 at 9). She further admits, "Because I was not assigned to any specific unit, I had to rely on the deputy wardens who were in the units on a daily basis when reviewing an inmate grievance." (Doc. 46-3 at 5).

There is no affidavit in the record of Deputy Warden Roan, the only person Defendant claims to have spoken to about this grievance. The only documentation from Deputy Warden Roan is his response to Plaintiff's grievance, in which he states that Plaintiff was given cleaning supplies to be used in the pod and the cells. (Doc. 46-3 at 24). Notably, it does not say that Plaintiff was ever physically permitted to clean his cell.

Thus, the only evidence in this record from someone with personal knowledge who claims that Plaintiff was permitted to clean his cell comes from Correction Officer II Jhiremy Rabadan. As recounted above, CO II Rabadan has avowed that "If an inmate wanted to clean his cell using the cleaning supplies provided to the porters, he could either ask an officer to allow the porter to let him use the cleaning supplies, or have the porter ask an officer for permission to do so." (Doc. 46-1 at 4). He also avowed, "When an officer could do so safely, he would have the control room officer open the cell of the inmate who wanted to clean the cell and allow the porter to give cleaning supplies to the inmate." (*Id.*). He continued "A porter could also clean his cell by requesting that it be unlocked." (*Id.*) He further avowed that "a porter could freely walk into his cell to clean it whenever the cell door was open…." (*Id.*).

Up to this point, it does not appear that Plaintiff disputes any of CO II Rabadan's avowals that all of these things were supposed to be available. Instead, Plaintiff claims that due to staffing shortages or other reasons, no request to unlock the cell door was ever granted. (Doc. 57 at 3).

Conversely, CO II Rabadan avows, "I saw [Plaintiff] walk into his cell multiple times while he worked as a porter. He had the opportunity to clean his cell on any of those occasions." (Doc. 46-1 at 4). As noted above, Plaintiff disputes this fact. However, the

- 14 -

issue is whether Defendant acted reasonably in concluding Plaintiff was being given the opportunity to clean his cell. Nowhere in Defendant's affidavit does she claim she spoke to CO II Rabadan or that CO II Rabadan told her that he personally witnessed Plaintiff having the opportunity to clean his cell. Thus, CO II Rabadan's testimony cannot be considered as information Defendant had knowledge of at the time of her investigation and decision.

### 1. Application of Qualified Immunity Standard

As already stated above,

> Claims of qualified immunity require the court to consider two questions: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right, *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and (2) whether the right was clearly established—that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

*Salvi v. Cty. of San Diego*, No. 18CV1936 DMS (MDD), 2019 WL 1671001, at *3 (S.D. Cal. Apr. 17, 2019).

As to the second prong, the Court must determine whether it would have been clear to a reasonable officer that Defendant's failure to ensure Plaintiff was receiving an opportunity to clean his cell violated Plaintiff's rights. In the context of probable cause, officers have been granted qualified immunity if they conducted a reasonable investigation prior to arresting someone. *See Griego v. Cty. of Maui*, No. CV 15-00122 SOM-KJM, 2017 WL 1173912, at *17 (D. Haw. Mar. 29, 2017), *reconsideration denied,* No. CV 15-00122 SOM-KJM, 2017 WL 2882695 (D. Haw. July 6, 2017), and *appeal dismissed,* No. 17-15643, 2017 WL 4843015 (9th Cir. Oct. 2, 2017) ("Similar to the officer in *Peng*, the officers conducted a reasonable investigation before concluding they had probable cause to arrest. The officers are therefore entitled to qualified immunity.").

Here, the Court cannot conclude Defendant conducted a reasonable investigation. Defendant avows that her investigation revealed that Plaintiff was a porter and that Plaintiff was being given cleaning supplies. The remainder of her affidavit says she *knew* porters were allowed to clean their cells. Nonetheless she disclaimed personal knowledge of the

daily operations of Plaintiff's unit; thus her affidavit is not based on her personal knowledge or observation that Plaintiff was being allowed to clean his cell.[6] As a result, when Defendant avows that she knows porters are allowed to clean their cells and that she knows that Plaintiff, as a porter, was allowed to clean his own cell, the Court is forced to assume she means she knows there is a policy that allows this to occur. However, no where in this record is there evidence that she investigated or was told by anyone that the policy was being followed in practice or custom.

Because Defendant made no effort to determine whether Plaintiff's grievance claiming that the policy that his door be unlocked for cell cleaning was not being honored was true before finding his claim to be unfounded, Defendant did not act reasonably. In other words, Defendant concluding that Plaintiff was making unfounded accusations in the face of no contrary evidence was not reasonable. And, as discussed above, a reasonable officer would have known that if Plaintiff was telling the truth — that he was not allowed to access his cell for cleaning for two years as of the grievance and five years as of the amended complaint — Plaintiff's rights were being violated. Thus, based on this record, Defendant is not entitled to qualified immunity.

### 2. Application of Deliberate Indifference Standard

As discussed above, as to the second prong of the merits of his claim, Plaintiff must show that Defendant acted with deliberate indifference. Specifically, deliberate indifference occurred if Defendant knew of and disregarded an excessive risk to Plaintiff's health or safety; Defendant must both have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and she must also have drawn the inference. *Farmer*, 511 U.S. at 837.

Here, Defendant makes two arguments regarding Plaintiff's grievance that he was never permitted to clean his cell. Specifically, she argues, "[Defendant] evaluated [Plaintiff's] statement that "[n]o Inmate has ever been allowed by any officer to clean the

---

[6] The Court notes that Plaintiff claims that for Defendant's investigation to have been reasonable she had to "leave her office……" The Court has found no law that would require a warden to personally witness every inmate's rights being honored. Thus, the Court rejects any such requirement because it is not clearly established law.

- 16 -

inside of his cell at any times" as not credible (*id*. ¶ 87), and as failing to comply with DO 802.01(1.1)'s requirement that an inmate grieve a matter which *directly and personally affects the inmate grievant*" (*id*. ¶ 105). (Doc. 45 at 13) (emphasis in original).

Regarding Defendant's conclusion that she did not find Plaintiff credible, a reasonable investigation is a basis to find a defendant did not act with deliberate indifference. *Toscano v. Lewis*, No. C-12-5893 EMC (PR), 2015 WL 4940832, at *16 (N.D. Cal. Aug. 19, 2015) ("On the evidence in the record, no reasonable juror could find that defendants were deliberately indifferent to a substantial risk of harm to Mr. Toscano in their housing decisions because they conducted a reasonable investigation into his circumstances before deciding to release Mr. Toscano to the general population in March 2011."); *see also Norwood v. Cate*, No. 1:09-CV-00330-AWI, 2014 WL 37241, at *9 (E.D. Cal. Jan. 6, 2014), *subsequently aff'd,* 676 F. App'x 649 (9th Cir. 2017).

Here, however, for the reasons discussed above, the Court has concluded that Defendant's investigation, wherein on this record it does not appear she ever looked into Plaintiff's grievance that his cell was never unlocked for cleaning, was not reasonable. Additionally, the Court does not find Defendant's argument that because Plaintiff claimed that "no inmate" was ever allowed to clean his cell, Defendant was relieved of her obligation to determine whether Plaintiff was allowed to clean his cell. Plaintiff, undisputedly, is an inmate. Thus, the statement "no inmate" would include himself. Accordingly, he was grieving a matter that directly and personally impacted him. The fact that he mentioned other people too does not make the grievance not apply to him personally.

Thus, Defendant was aware of alleged facts, specifically prolonged unsanitary conditions, that could pose an excessive risk to Plaintiff's health and safety. Further, on this record there is evidence that she disregarded this risk by not investigating whether Plaintiff's allegations that the policy Defendant knew of (which permitted inmates to clean their cells upon request) was not being followed. Accordingly, Defendant's motion for summary judgment on the basis that she was not deliberately indifferent is denied.

## V. Injunctive Relief

Plaintiff seeks injunctive relief regarding being permitting to clean at Buckley Unit (among other things). (Doc. 57 at 13). It is undisputed that Plaintiff is no longer housed at Buckley Unit. (Doc. 45 at 15; Doc. 57 at 2). As a result, the Court finds this request to be moot. The Court notes that Plaintiff disputes this finding arguing that he could be transferred back to Buckley Unit at any time. (Doc. 57 at 13). The Court nonetheless finds this issue to be moot at this time; but denies Plaintiff's request without prejudice to him renewing it if he is transferred back to Buckley Unit.

## VI. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to this entire case.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Doc. 45) is granted as to Plaintiff's request for injunctive relief (Plaintiff's request for injunctive relief is denied without prejudice) and denied in all other respects.

Dated this 10th day of May, 2019.

James A. Teilborg
Senior United States District Judge